IN THE UNITED STATES DISTRCT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| RENEE TERESA-GOELLNER-GRANT, KYLE D. GRANT and ALEXANDER GOELLNER | |
| Plaintiffs, | Case No. _____ |
| vs. | |
| JLG INDUSTRIES, INC., a Pennsylvania Corporation, | JURY TRIAL DEMANDED |
| Serve: | |
| The Corporation Trust Company 116 Pine Street, Suite 320 Harrisburg, PA 17101 | |
| Defendant. | |

## **COMPLAINT**

Plaintiffs Renee Teresa Goellner-Grant, Kyle D. Grant and Alexander Goellner, for their

Complaint against JLG Industries, Inc. ("JLG" or "Defendant"), make the following allegations:

## **PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Renee Teresa Goellner-Grant is a citizen and resident of Missouri.

2.      Plaintiff Kyle D. Grant is a citizen and resident of Missouri.

3.      Plaintiff Alexander Goellner is a citizen and resident of Missouri.

4.      Plaintiff Renee Goellner-Grant was married to Randall Lee Grant until Mr.

Grant's death on April 30, 2015.

5.      Plaintiffs Kyle D. Grant and Alexander Goellner are the sons of Mr. Grant.

6.      Plaintiffs bring this action pursuant to Mo. Rev. Stat. § 537.080, commonly

referred to as the "Missouri Wrongful Death Statute," on behalf of themselves and all persons

entitled to recover under the statute.  Plaintiffs are the proper parties to this action under the

statute and bring this action for the wrongful death of their husband and father, Randall Lee Grant ("Decedent").

7.     Defendant JLG is a Pennsylvania corporation, with its principal place of business at 1 JLG Drive, McConnellsburg, Pennsylvania 17233-9533.

8.     This Court has personal jurisdiction over Defendant pursuant to Kansas's long arm statute Kan. Stat. Ann. § 60-308.  This cause of action arises out of Defendant's business transactions in Kansas including, but not limited to, sale and delivery of products within Kansas that caused or contributed to the death of Decedent.  In addition, Defendant transacts business within Kansas and/or committed a tort within Kansas, avails itself of the business opportunities here, advertises the availability of parts, services and information within Kansas, ships parts, products and literature into Kansas, and receives money from businesses and individuals within Kansas.

9.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) or (3) because a substantial part of the events or omissions giving rise to the claims occurred in Kansas City, Kansas and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## PROCEDURAL HISTORY AND RELATED CASES

11.     Plaintiffs filed suit against Defendant JLG Industries, Inc., and Blueline Rental LLC ("Blueline") in the U.S. District Court for the Eastern District of Missouri on February 28, 2018, Civ. Action No. 4:18-cv-00342-SNLJ.

12.     In response to a Memorandum and Order (Doc No. 24, Civ. Action No. 4:18-cv-00342-SMLJ), Plaintiffs filed a First Amended Complaint against JLG Industries, Inc., on April 27, 2018.

13.     On June 19, 2018, the Eastern District of Missouri dismissed Plaintiff's First Amended Complaint against JLG Industries for lack of personal jurisdiction.  (Doc. No. 43, Civ. Action No. 4:18-cv-00342-SMLJ).

14.     On April 27, 2018, Plaintiffs filed a Petition in the Missouri Circuit Court, Twenty-First Judicial Circuit, St. Louis County, Case No. 18SL-CC01713, against Platinum Equity, LLC, Blueline, and United Rentals, Inc., alleging wrongful death counts of strict product liability, failure to warn, and negligence.

15.     On April 30, 2018, Plaintiffs filed a First Amended Petition in the Twenty-First Judicial Circuit adding Defendant United Rentals (North America), Inc.

16.     On June 4, 2018, the Missouri State Action was removed to the Eastern District of Missouri, Civ. Action No. 4:18-cv-00836-SNLJ.  This action is currently pending.

## FACTUAL BACKGROUND

17.     On April 30, 2015, Decedent was an employee of ERMC III Property Management Company LLC ("ERMC").

18.     On April 30, 2015, Decedent was replacing light bulbs in a parking garage of West County Center in St. Louis County, Missouri, using a JLG Aerial Boom Lift, Model No. E450AJ, Lift No. 10422, Serial No. 0300066578 (the "JLG Lift"), when he became trapped between the control panel of the JLG Lift and a metal cross bar protruding from the ceiling of the garage.

19.     Decedent was later found standing in the enclosed platform of the JLG Lift with his chest and face pushed against the control panel and with the back of his head pressed against a metal cross bar protruding down from the parking garage ceiling.

20.     Decedent's accident, and the forces involved, were so severe that he was crushed and died of compression asphyxia.

21.     The JLG Lift that Decedent was operating was provided to him by his employer ERMC.  ERMC purchased the JLG Lift to perform property maintenance at the West County Center.  At all relevant times, Decedent was using the JLG Lift in a manner reasonably anticipated.

22.     The JLG Lift used by Decedent on April 30, 2015, was defective and unreasonably dangerous in that it exposed users, including Decedent, to unreasonable risks of harm and death.

### *The JLG Lift*

23.     The JLG Lift lacked certain safety features, such as a safety guard or SkyGuard®, which would have prevented the crushing-type injury that led to Decedent's death.

24.     The JLG Lift that Decedent was operating was originally designed, engineered, manufactured, assembled and marketed by Defendant and placed into the stream of commerce, where it reached Decedent in substantially the same condition as when it left the control of Defendant and had not been materially altered, modified or damaged.

25.     Immediately prior to the accident on April 30, 2015, the JLG Lift was in substantially the same condition as when it left the control of Defendant and had not been materially altered, modified, or damaged.

26.     At that time, the JLG Lift was being used as intended and in a manner reasonably foreseeable by Defendant.

27.     At the time Decedent operated the JLG Lift, the JLG Lift was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended.

28.     At the time the JLG Lift was sold new, it was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended when in Defendant's control.

29.     The accident and danger posed by the defective and unreasonably dangerous condition of the JLG Lift was known or should have been known to Defendant.

30.     The JLG Lift failed to function as expected.

31.     Alternative feasible designs or additional safety features existed that would not impair the JLG Lift's usefulness or desirability.

32.     The alternative feasible designs or additional safety features would have prevented Decedent's injuries and death.

33.     As a direct and proximate result of Defendant's conduct, acts and omissions, Decedent was injured and died, which injuries and death caused physical, mental, emotional injuries, and economic damages.

## COUNT I
## WRONGFUL DEATH – STRICT PRODUCT LIABILITY

34.     Plaintiffs incorporate by reference the above allegations as if fully set forth herein.

35.     Defendant, in the course of its regular business, designed, fabricated, produced, assembled, developed, manufactured, tested, distributed, sold, and placed on the market and into

the stream of commerce a defective and unreasonably dangerous product, namely the JLG Lift, knowing that the JLG Lift would reach consumers without substantial change in the condition in which it was sold and that, at the time the JLG Lift left Defendant's control, it was defective and in an unreasonably dangerous condition.

36.     Defendant knew or should have known that ultimate users, operators and/or consumers would not be capable of detecting the JLG Lift's defects and dangerous conditions.

37.     The JLG Lift was, at the time of sale by Defendant, in a defective condition and unreasonably dangerous when put to a reasonably anticipated use.

38.     On April 30, 2015, the JLG Lift was being used for the purpose for which it was reasonably and foreseeably intended.

39.     The JLG Lift was defective and unreasonably dangerous.  The defective nature of the JLG Lift included, but is not limited to, the following:

    a.   The JLG Lift was defective and unreasonably dangerous because Defendant failed to use technologically feasible and available guard systems to prevent crush injuries;

    b.   The structure of the JLG Lift was defective and unreasonably dangerous because it failed to protect an occupant in a foreseeable encounter with an overhead obstruction;

    c.   The JLG Lift was defective and unreasonably dangerous because Defendant failed to design or equip the JLG Lift so as to enable an operator to detect and/or avoid overhead obstructions;

d.  The JLG Lift was defective and unreasonably dangerous because Defendant failed to design or equip the JLG Lift so as to provide warning to an operator when approaching or in contact with an overhead obstruction;

e.  The JLG Lift was defective and unreasonably dangerous because Defendant failed to design or equip the JLG Lift so as to avoid continued operation of the JLG Lift in the foreseeable event that an operator is struck by an overhead obstruction or otherwise impaired;

f.  The JLG Lift was defective and unreasonably dangerous because Defendant failed to design or equip the JLG Lift was a sensor that, when activated in a foreseeable emergency situation, such as the events that led to the death of Decedent, stops all functions in use at the time;

g.  The JLG Lift was defective and unreasonably dangerous because Defendant failed to design or equip the JLG Lift was a sensor that, when activated in a foreseeable emergency situation, such as the events that led to the death of Decedent, reverses the immediately preceding operations of the JLG Lift; and

h.  Such further defects as the evidence will reveal.

40.     The defective and unreasonably dangerous condition of the JLG Lift was the direct and proximate cause of Decedent's serious injuries and death.

41.     Defendant knowingly failed to adequately test the JLG Lift before and during the design, production, lease, rent, and/or sale of the JLG Lift to the public and/or knowingly placed the unreasonably dangerous JLG Lift into the stream of commerce.

42.     As a direct and proximate result of the injuries to and death of Decedent, Plaintiffs were required to expend and incur expenses for substantial medical, hospital and

funeral expenses.  Further, Plaintiffs have forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent.  In addition, Plaintiffs are entitled to all damages that Decedent sustained before his death and for which he would have been entitled to recover had he lived.

43.     Prior to Decedent's serious injuries and death, Defendant knew of the defective and unreasonably dangerous condition of the JLG Lift.

44.     The aforesaid misconduct of Defendant constituted gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, inducing Decedent, thus justifying and requiring an award of additional damages for aggravating circumstances to be assessed against Defendant in a sum that will deter Defendant from such misconduct in the future.

WHEREFORE, Plaintiffs prays for judgment against Defendant for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000), additional damages for aggravating circumstances, costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

## COUNT II
## WRONGFUL DEATH – STRICT PRODUCT LIABILITY – FAILURE TO WARN

45.     Plaintiffs incorporate by reference the above allegations as if fully set forth herein.

46.     Defendant, in the course of its regular business, designed, fabricated, produced, assembled, developed, manufactured, tested, distributed, sold, and placed on the market and into the stream of commerce a defective and unreasonably dangerous product, namely the JLG Aerial Boom Lift, including the JLG Lift, knowing that the JLG Lift would reach consumers without

substantial change in the condition in which it was sold and that, at the time the JLG Lift left Defendant's control, it was defective and in an unreasonably dangerous condition.

47.     Defendant failed to adequately warn consumers and users of the JLG Lift of the risks associated with the use of the product including, but not limited to, the substantial risk of injuries and death due to the defects of the JLG Lift and the unreasonably dangerous condition of the JLG Lift, including the substantial risk of interactions of the JLG Lift with overhead obstructions.

48.     Defendant knew or should have known that ultimate users, operators and/or consumers would not be capable of detecting the aforementioned defects and dangerous conditions.

49.     Decedent was unaware and was not warned that the JLG Lift created a substantial risk of sustaining a crush injury or death.

50.     The JLG Lift was, at the time of sale by Defendant JLG, in a defective condition and unreasonably dangerous when put to a reasonably anticipated use.

51.     On April 30, 2015, the JLG Lift was being used for the purpose for which it was reasonably and foreseeably intended.

52.     The defective and unreasonably dangerous condition of the JLG Lift, and the Defendant's failure to warn of such defects and unreasonably dangerous conditions, were the direct and proximate cause of Decedent's serious injuries and death.

53.     As a direct and proximate result of the injuries to and death of Decedent, Plaintiffs were required to expend and incur expenses for substantial medical, hospital and funeral expenses.  Further, Plaintiffs have forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent.  In addition, Plaintiffs are entitled to all

damages that Decedent sustained before his death and for which he would have been entitled to recover had he lived.

54.     Prior to Decedent's serious injuries and death, Defendant knew of the defective and unreasonably dangerous condition of the JLG Lift and failed to give adequate warning of the danger.

55.     The aforesaid misconduct of Defendant constituted gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, inducing Decedent, thus justifying and requiring an award of additional damages for aggravating circumstances to be assessed against Defendant in a sum that will deter Defendant from such misconduct in the future.

WHEREFORE, Plaintiffs pray for judgment against Defendant for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000), additional damages for aggravating circumstances, costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

## COUNT III
## WRONGFUL DEATH – NEGLIGENCE

56.     Plaintiffs incorporate by reference the above allegations as though fully set forth herein.

57.     Defendant had a duty to exercise reasonable care in designing, manufacturing, marketing, maintaining, supplying, selling, leasing, testing, inspecting or otherwise distributing and placing into the stream of commerce the JLG Lift.

58.     Defendant owed a duty of reasonable care to Decedent to take reasonable precautions or steps, including but not limited to equipping the JLG Lift with adequate or

sufficient safety features, or to provide adequate warnings or instructions, to prevent the type of foreseeable injury suffered by Decedent as a result of the negligence alleged herein.

59.    Defendant failed to use reasonable care and diligence in the design, engineering, manufacture, assembly, testing, inspecting, equipping, lease and/or sale of the JLG Lift.

60.    Defendant breached their duty of reasonable care and diligence, and were therefore negligent in performing their duties to Decedent and others in at least the following respects:

a.    Negligently incorporating defects in the JLG Boom Lift, including the JLG Lift;

b.    Negligently failing to incorporate safety features that could have prevented the injuries and death suffered by Decedent;

c.    Negligently manufacturing or assembling the JLG Lift;

d.    Negligently failing to warn Decedent of the JLG Lift's defects;

e.    Negligently failing to instruct Decedent as to the proper and safe use and operation of the JLG Lift, particularly in the case of use near or in conjunction with overhead obstructions;

f.    Negligently failing to adequately test the JLG Lift;

g.    Negligently failing to retrofit the JLG Lift with available safety features or devices;

h.    Negligently failing to inform Decedent that the JLG Lift had defects or was unreasonably dangerous or that the JLG Lift could be equipped with safety features that could have prevented Decedent's injuries and death;

i.    Negligently failing to inspect the JLG Lift; and

j.   Such further negligent acts and omissions as discovery will reveal.

61.   Defendant breached its duty to Decedent and others by failing to take reasonable precautions or steps to prevent the type of foreseeable injury suffered by Decedent as a result of the negligence alleged herein.

62.   As a direct and proximate result of Defendant's negligence, Decedent suffered a severe crush injury and death by asphyxiation.

63.   At the time of Defendant's design, fabrication, production, assemblage, development, manufacture, testing, distribution and sale of the JLG Lift, Defendant knew, or in the exercise of ordinary care, should have known about, the aforesaid defects and dangerous conditions of the JLG Lift, and failed to eliminate or warn of the defects, and thereby showed complete indifference to and/or conscious disregard for the safety of others.

64.   The aforesaid misconduct of Defendant constituted gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, inducing Decedent, thus justifying and requiring an award of additional damages for aggravating circumstances to be assessed against Defendant in a sum that will deter Defendant from such misconduct in the future.

WHEREFORE, Plaintiffs pray for judgment against Defendant for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000), additional damages for aggravating circumstances, costs herein incurred, prejudgment interest, post judgment interest, and for such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs hereby request a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all claims and issues so triable.

Dated: October 25, 2018

**Respectfully submitted,**

BY:     **/s/ *Stephen M. Gorny***
        **STEPHEN M. GORNY            KS # 16984**
        **CHRISTOPHER D. DANDURAND KS # 25656**
        **4330 Belleview Avenue, Suite 200**
        **Kansas City, Missouri 64111**
        **(816) 756-5071 (telephone)**
        **(816) 756-5067 (facsimile)**
        **steve@gornylawfirm.com**
        **chris@gornylawfirm.com**

        **ATTORNEYS FOR PLAINTIFF**